# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Herbert Demond York, #369211, | ) | C/A No.: 1:16-3972-DCC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Ofc. T. Starks; Ofc. Lovine; Major Jackson; and Juan Estrada, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Herbert Demond York ("Plaintiff"), proceeding pro se and in forma pauperis, filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his incarceration at Kirkland Correctional Institution ("KCI") in the custody of the South Carolina Department of Corrections ("SCDC"). Plaintiff asserts claims against SCDC officers Ofc. T. Starks ("Starks"), Ofc. Lovine ("Lovine"), Major Jackson ("Jackson"), and Juan Estrada ("Estrada") (collectively "Defendants").

This matter comes before the court on the recommitment of this matter to the undersigned following Plaintiff's objections to the Report and Recommendation issued October 19, 2017 ("First Report"). [ECF No. 74]. Plaintiff's objections contained extensive evidence relevant to the discussion of whether Plaintiff exhausted his administrative remedies. [ECF Nos. 76, 81]. Plaintiff also moved for an extension of time in which to respond to Defendants' motion for summary judgment, which the undersigned granted, permitting him until December 7, 2017, to supplement his response to summary judgment. [ECF Nos. 77, 84]. Plaintiff did not file a supplemental response.

The undersigned submits this Report, which is substantially the same as the First Report, but has been supplemented with additional relevant information.

Before the court are Defendants' motions (1) to compel and for sanctions [ECF No. 67] and (2) for summary judgment [ECF No. 68]. Plaintiff did not file a response to the motion to compel. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion for summary judgment. [ECF No. 69]. Plaintiff filed a response to the motion for summary judgment. [ECF No. 72]. Plaintiff having had an opportunity to respond to the motions, they are ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the record in this case, the undersigned recommends the district judge grant Defendants' motion to compel and for sanctions, or in the alternative, grant their motion for summary judgment.

I.      Factual Background[1]

Plaintiff's complaint alleges he was housed at KCI in the F-3 dorm, A Wing, on September 28, 2016. [ECF No. 1 at 6]. Plaintiff alleges Starks left her SCDC radio on a bench, and he picked it up while she was in the bathroom. *Id*. at 6–7. When Starks questioned Plaintiff about the radio, he told her he had taken it, but would not return it

---

[1] The undersigned construes the facts in the light most favorable to Plaintiff pursuant to Fed. R. Civ. P. 56.

until she called mental health to see him. *Id.* at 7. Starks left the wing and returned to the dorm hallway with Lovine. *Id.* Plaintiff alleges Starks then pulled her mace and ordered Plaintiff to return the radio, causing him to fear for his life. *Id.* Plaintiff claims he tossed the radio on the floor beside Starks and immediately ran outside so he would not miss dinner. *Id.* According to Plaintiff, Starks and Lovine chased and caught him, at which time they began punching, choking, and slapping him. *Id.* Plaintiff claims he did not fight back and did not pose a threat to the officers. *Id.*

Around this time, Officer Johnson, who is not a defendant in this action, and Estrada arrived at the scene. *Id.* Plaintiff claims Johnson grabbed him, placed him on the floor, and handcuffed him. *Id.* Plaintiff alleges Estrada instructed him to lie on his back and then sprayed chemicals on his face. *Id.* Plaintiff claims he was taken to a holding cell and held for two-and-a-half hours without seeing medical staff, but was allowed water for approximately one-and-a-half minutes. *Id.* Plaintiff was then seen by medical staff and placed on crisis intervention. *Id.* Plaintiff was provided a shower the following day. *Id.* Plaintiff claims he received facial burns and has nightmares because of this incident. *Id.* at 8.

II.     Discussion

    A.     Motion to Compel

Defendants originally filed a motion to compel on July 13, 2017, because they had not received discovery responses from Plaintiff after two extensions. [ECF No. 60.] The undersigned granted Defendants' motion to compel and directed Plaintiff to serve Defendants with discovery responses by August 4, 2017. [ECF No. 62] Plaintiff was

warned that if he failed to serve discovery responses, the undersigned may recommend that this matter be dismissed for his failure to participate in discovery. *Id.* On August 11, 2017, Defendants had still not received discovery responses from Plaintiff and filed the instant motion to compel and for sanctions. [ECF No. 67]. Plaintiff failed to file a response. Therefore, the undersigned recommended in the First Report that the court grant Defendants' motion to compel and for sanctions and dismiss this case for Plaintiff's failure to participate in discovery and to comply with a court order. [ECF No. 74].

In Plaintiff's objections to the First Report, he states that he mailed his responses to Defendants' discovery requests on August 4, 2017, and that his responses must have been misplaced. [ECF No. 76]. However, Plaintiff does not address why he failed to respond to Defendants' August 11, 2017 motion to compel, particularly in light of the court's warning that failure to serve discovery responses may result in a recommendation that this matter be dismissed. It is Plaintiff's responsibility to respond to Defendants' motions and to the court's orders and his failure to do so is to his own detriment. The undersigned recommends Defendants' motion to compel and for sanctions be granted, as Plaintiff has demonstrated a pattern of failing to respond to Defendants' motions and court orders.[2]

---

[2] Most recently, mail sent to Plaintiff in another case before the court has been returned with a mark on the envelope indicating the recipient had been release without leaving an address. *See* ECF No. 66 in C/A No. 1:16-3971-RMG-SVH. A district court may take judicial notice of materials in the court's own files from prior proceedings. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that the most frequent use of judicial notice is in noticing the content of court records). Plaintiff was previously warned that he must apprise the court of any change in address. [ECF No. 7]. Because Plaintiff has not apprised the court of a current address, the court expects all mailings to

B.     Motion for Summary Judgment

1.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow

the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### 2. Plaintiff's Attempts to Exhaust Administrative Remedies

Defendant argues that Plaintiff failed to timely exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524.

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [PLRA], that define the boundaries of proper

exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). The law is well established that the full exhaustion requirement is mandatory prior to even initiating a lawsuit under 42 U.S.C. § 1983. *See Anderson v. XYZ Corr. Health Services*, 407 F.3d 674, 677 (4th Cir. 2005).

Pursuant to SCDC Grievance Policy GA–01.12, in most cases, inmates must make an effort to informally resolve a grievance by submitting a Request to Staff Member form to the appropriate supervisor/staff member within eight days of the incident. Anderson Aff. at ¶¶ 4–5.[3] If this does not resolve the issue, the inmate may file a Step 1 grievance. *Id.* at ¶ 6. If dissatisfied with the response to the Step 1 grievance, the inmate may appeal with a Step 2 grievance. *Id.* at ¶ 9. *Id.*

SCDC Policy GA 01.12 also provides for an emergency grievance procedure. Anderson Aff. at ¶ 11. An emergency will encompass, but is not limited to, situations, actions, or conditions in which any person's health, safety, or welfare is threatened or in serious danger. *Id.* It is the responsibility of the grievant to demonstrate the factors creating the substantial risk of personal injury or other serious and irreparable harm. *Id.* The Inmate Grievance Branch will determine if a substantial risk of serious harm is present and warrants the grievance being processed as an "emergency." *Id.* If the

---

[3] The undersigned cites to the affidavit of Sherman L. Anderson, Chief of Inmate Grievance Branch, which may be found at ECF No. 68-3, for a summary of the grievance policy. Additionally, the court may take judicial notice of the SCDC grievance policy. *See Malik v. Ward*, No. 8:08-1886-RBH-BHH, 2010 WL 936777, at *2, n. 4 (D.S.C.

grievance is not determined to be an emergency, the grievance will then be routinely processed through the system as if it were a normal grievance. *Id*. at ¶ 14.

On September 30, 2016, Plaintiff submitted a Step 1 grievance (KCI-0871-16) that he deemed to be an emergency grievance related to alleged excessive use of force on September 28, 2016. [ECF No. 68-4 at 1]. The grievance was reviewed and determined not be an emergency, thus it was processed as normal. Anderson Aff. at ¶ 16. The grievance was forwarded to the Office of Inspector General Police Services ("OIG") due to the allegations of excessive use of force. *Id*. Ultimately, on February 7, 2017, the grievance was returned to Plaintiff, as he failed to attach an informal resolution as required by the grievance policy. *Id*. Plaintiff was provided five days within which to refile the grievance with the documentation, but he failed to do so. *Id*.

On October 10, 2016, Plaintiff submitted a Step 1 grievance (KCI-0905-16) that he deemed an "emergency medical grievance appeal" related to medical treatment after having been sprayed by chemical munitions. *Id*. at ¶ 17; ECF No. 68-4 at 3. The grievance was reviewed and determined not to be an emergency and was processed as normal. *Id*. On October 19, 2016, the grievance was returned to Plaintiff, as he failed to attach a completed informal resolution, as required by the grievance policy. *Id*. Plaintiff was provided five days within which to refile the grievance with the documentation, but he failed to do so. *Id*.

Also on October 10, 2016, Plaintiff submitted a Step 1 grievance (KCI-0952-16) relating to medical treatment for chest pains, face burns, and breathing treatment for his

---

March 16, 2010).

asthma. *Id*. at ¶ 18; ECF No. 68-4 at 6. He stated he had not received his asthma inhaler. *Id*. On October 20, 2016, the grievance was returned to Plaintiff, as he attempted to grieve more than one issue in this grievance. *Id*. Per policy, only one issue is allowed per grievance form. *Id*. Plaintiff did not refile the grievance regarding his medical treatment issues on separate forms. *Id*.

On October 17, 2016, Plaintiff submitted a Step 1 grievance (KCI-0937-16) regarding the alleged use of excessive force that he labeled an appeal to the answer to a Request to Staff form allegedly filed on September 30, 2016, which was not attached. *Id*. at ¶ 19; ECF No. 68-4 at 4–5. This was treated as a normal Step 1 grievance and was forwarded to the OIG due to the allegations of excessive use of force. *Id*. Ultimately, on December 14, 2016, the grievance was returned to Plaintiff, as he failed to attach the completed informal resolution as required by the grievance policy. *Id*. Plaintiff was provided five days within which to refile the grievance with the documentation, but he failed to do so. *Id*.

On or about December 16, 2016, Plaintiff submitted a Step 1 grievance (KRCI 1743-16) while he was at Kershaw Correctional Institution ("Kershaw"). *Id*. at ¶ 20; ECF No. 68-4 at 7–8. However, because Plaintiff had been transferred back to KCI when it was processed at Kershaw, it was forwarded to KCI and assigned a different grievance number (KCI-0054-17). Plaintiff attempted to file this Step 1 grievance as a Step 2 appeal grievance to KCI-0937-16 and alleges he received a response from Major Jackson to his Request to Staff Member. ECF No. 68-4 at 7–8. However, he does not attach a written response from Jackson or explain why he failed to attach the written response from

Jackson. This was processed as a new Step 1 grievance because Plaintiff did not attach a Request to Staff Member form. *Id*. The court also notes that by the time KCI and received the grievance on December 20, 2016, Plaintiff had already filed the complaint in this matter.

### 3.    Analysis

Defendants argue that Plaintiff failed to exhaust his administrative remedies, as he failed to file a valid Step 1 grievance. In response, Plaintiff argues he "has reappeal[ed] his grievance but ha[s] not receive[d] a response." [ECF No. 72 at 7]. However, Plaintiff must exhaust his administrative remedies prior to initiating a lawsuit. *See, e.g.*, *Lee v. S.C. Dept. of Corrections*, C/A No. 1:15-4415-RMG, 2016 WL 3176582 (D.S.C. June 2, 2016) (dismissing prisoner's complaint in which he admitted that he was awaiting a response to his Step 2 grievance).

Additionally, Plaintiff cites case law from other circuits holding that administrative remedies are exhausted when prison officials do not respond to an initial grievance or when the prisoner does everything necessary to exhaust, but the grievance simply disappears. *Id*. at 7–8. Plaintiff argues that he never received a response from the OIG, but fails to show that he is entitled to a response from the OIG. Furthermore, Plaintiff provides no policy stating that an inmate is not responsible for exhausting administrative remedies pursuant to policy if a grievance is forwarded to OIG. *Id*. at 8. The grievances alleging excessive force were sent to the OIG "for possible review," but were ultimately returned to Plaintiff for failure to comply with the grievance policy. [ECF No. 68-4 at 1, 4]. Additionally, Plaintiff has not shown any evidence that he filed a

grievance to which prison officials failed to respond. Although Plaintiff submitted some grievance documents relevant to this case with his objections [ECF No. 76-1 at 6–11], these documents do not show that Plaintiff exhausted his administrative remedies. In fact, some of these documents are duplicates of the grievances already in the record before the court. Under these circumstances, the undersigned is constrained to find that Plaintiff has failed to exhaust his administrative remedies, and, therefore, recommends Defendants be granted summary judgment.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Defendants' motion to compel and for sanctions [ECF No. 67] and dismiss this case for Plaintiff's failure to respond to the Defendants' motion and the court's orders. Alternatively, the undersigned recommends the district judge grant Defendants' motion for summary judgment [ECF No. 68].[4]

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 15, 2017                                Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[4] This Report vacates the First Report.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).